COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-06-082-CR

        
2-06-083-CR

       
 2-06-084-CR

       
 2-06-085-CR

       
 2-06-086-CR

LARRY NUELL NEATHERY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

In five points, appellant Larry Nuell Neathery appeals his convictions for aggravated sexual assault, indecency with a child, sexual performance by a child, and attempted aggravated sexual assault.
(footnote: 2)  We affirm the trial court’s judgments in cause numbers 2-06-082-CR, 2-06-083-CR, 2-06-084-CR.  We affirm as modified the trial court’s judgments in cause numbers 2-06-085-CR and 2-06-086-CR.

BACKGROUND

There were five complainants, B.H., C.H., M.L., C.M., and D.M., all of whom were under the age of fourteen at the time of the alleged offenses. Appellant pled not guilty to all of the charges.

Regarding B.H., the jury found Appellant guilty of committing four counts of aggravated sexual assault and two counts of indecency with a child and assessed punishment at life imprisonment for one of the aggravated sexual assault counts and ninety-nine years’ confinement for each of the other three counts, as well as twenty years’ confinement for each of the indecency counts. 

Regarding C.H., the jury found Appellant guilty of committing seven counts of aggravated sexual assault, two counts of indecency with a child, and one count of sexual performance by a child and assessed punishment at life imprisonment for the first aggravated sexual assault count, ninety-nine years’ confinement for each of the other six counts of aggravated sexual assault, and twenty years’ confinement for each of the indecency and sexual performance counts.

Regarding M.L., the jury found Appellant guilty of two counts of aggravated sexual assault and four counts of indecency with a child and assessed life imprisonment for the first count of aggravated sexual assault and ninety-nine years’ confinement for the second, twenty years’ confinement for each of three of the indecency counts, and ten years’ confinement for one of the indecency counts.

Regarding C.M., the jury found Appellant guilty of one count of indecency with a child and one count of attempted aggravated sexual assault and assessed ten years’ confinement for each count.  Regarding D.M., the jury found Appellant guilty of committing sexual performance by a child and assessed punishment at twenty years’ confinement.  The trial court accepted the jury’s verdicts and sentenced Appellant accordingly.

SUFFICIENCY OF THE EVIDENCE

In his first two points, Appellant complains that the evidence is legally and factually insufficient to support the jury’s verdicts finding him guilty of all counts.

Standard Of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Bowden v. State
, 166 S.W.3d 466, 470 (Tex. App.—Fort Worth 2005, pet. ref’d).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar v. State
, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); 
Malik
, 953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry
, 30 S.W.3d at 404.  We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review.  
Moff v. State
, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”  
Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.” 
 Id
. at 9.

All five boys testified about their interactions with Appellant, a church pastor.  M.L. was around thirteen when he made his outcry statement to his mother.  His father was Appellant’s friend, and they attended Appellant’s church.  C.M. was around thirteen at the time of his incident, had lived near Appellant, and had gone to Appellant’s church; he came forward after M.L. made allegations against Appellant.  C.H. and B.H. are Appellant’s grandsons and D.M. is Appellant’s step-grandson.  Several months after M.L.’s outcry, C.H. revealed that Appellant had been sexually assaulting him and his younger brother, B.H.  Sexual assault examinations of M.L., C.H., and B.H. did not reveal any physical signs of abuse, but both sexual assault nurse examiners testified that this was not unusual.

Sexual Performance by a Child

A person commits the offense of sexual performance by a child if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than age eighteen to engage in sexual conduct or a sexual performance, where sexual conduct means, 
inter alia
, masturbation, and sexual performance means any performance or part thereof that includes sexual conduct by a child younger than eighteen.  
See
 
Tex. Penal Code Ann. 
§ 43.25(a), (b).  Appellant was accused of committing sexual performance by a child in D.M. and C.H.’s cases.

D.M., who was age thirteen at trial, testified about a “jack-off contest” that Appellant organized at his house between D.M., C.H., Appellant, and D.M.’s older brother, who was also a minor.
(footnote: 3)  D.M. testified that the boys had to masturbate, climax, and show Appellant “the wet spots” in order to get money for being in the contest.  He testified that he received $5.00.

C.H., who was also age thirteen at trial, testified about the contest with D.M. and D.M.’s older brother at Appellant’s house, stating that Appellant threatened them first and then offered to pay them.  C.H. testified that Appellant said that the winner, that is, the first to ejaculate, would get $10.00 and second place would get $5.00.  C.H. testified that D.M.’s older brother got $10.00.  He testified that he and D.M. each received $5.00 because they had “both spermed at the same time.”  C.H. testified that Appellant masturbated at the same time as the boys.

B.H., who had not been present for the contest, testified that D.M. told him about it and showed him the $5.00.  C.M. testified that D.M.’s older brother and C.H. told him about the contest and that he saw the money.  He also testified that he told C.H.’s mother, Regina, but that when she confronted Appellant about it, the boys changed their story and claimed that Appellant had paid them for cleaning.  Appellant testified that he did not commit any of the charged behavior.  He specifically testified that he did not encourage a “jack-off contest” and that he had given the boys the money for doing chores.

Viewing this evidence in the light most favorable to the verdict, we conclude that the jury could have found the essential elements of sexual performance by a child with regard to both D.M. and C.H. beyond a reasonable doubt by choosing to believe their testimony over Appellant’s and resolving any conflicts within the evidence to reach their conclusion.  
See
 
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton,
 165 S.W.3d at 693.  Specifically, both D.M. and C.H. were younger than eighteen and testified that Appellant induced them to engage in masturbation by offer of payment and paid them $5.00 each afterward.  
See
 
Tex. Penal Code Ann. 
§ 43.25(a), (b).  The jury could have inferred Appellant’s “knowing the character and content thereof” of his offer based on the same testimony.
  See id.
  We conclude that the evidence was legally sufficient to convict Appellant of sexual performance by a child with both C.H. and D.M., and we overrule this portion of Appellant’s first point.

 Viewing the same evidence in a neutral light, we conclude that it was not so weak that the jury’s determination was clearly wrong and manifestly unjust, or that the conflicting evidence presented by Appellant so greatly outweighed the evidence supporting conviction for sexual performance of a child in both D.M.’s and C.H.’s cases that the jury’s determination was manifestly unjust.  
See Watson
, 204 S.W.3d at 414-15, 417; 
Johnson
, 23 S.W.3d at 11.  The jury heard evidence not only from D.M., C.H., and Appellant, but also from B.H. and C.M., who claimed that they saw the money Appellant paid, and, during the State’s rebuttal, D.M.’s older brother, who testified that he told Appellant that he finished first and that he received $10.00 from Appellant.  Therefore, deferring to the jury’s determination of the weight to be given contradictory testimonial evidence, we conclude that the evidence was factually sufficient to convict Appellant of sexual performance by a child in the cases involving D.M. and C.H., and we overrule this portion of his second point.  
See
 
Johnson
, 23 S.W.3d at 8.

Aggravated Sexual Assault

A person commits aggravated sexual assault when the child is younger than fourteen and the person intentionally or knowingly causes: the penetration of the child’s anus or sexual organ by any means; the penetration of the child’s mouth by the sexual organ of the actor; the child’s sexual organ to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; the child’s anus to contact the mouth, anus, or sexual organ of another person, including the actor; or the child’s mouth to contact the anus or sexual organ of another person, including the actor.  
See
 
Tex. Penal Code Ann
. § 22.021(a)(1)(B), (a)(2)(B).  Appellant was accused of committing aggravated sexual assault of C.H., B.H., and M.L.  Because some of the counts involved Appellant causing C.H. and B.H. to act together, we will address the charges involving C.H. and B.H. first, and then the charges pertaining to M.L.

Appellant was accused of committing aggravated sexual assault of C.H. by intentionally or knowingly causing: (1) C.H.’s anus to contact Appellant’s sexual organ, (2) C.H.’s sexual organ to contact Appellant’s anus, (3) the penetration of C.H.’s mouth with Appellant’s sexual organ, (4) C.H.’s sexual organ to contact Appellant’s mouth, (5) C.H.’s anus to contact Appellant’s mouth, (6) C.H.’s sexual organ to contact B.H.’s mouth, and (7) C.H.’s mouth to contact B.H.’s sexual organ.  
See id. 
§ 22.021(a)(1)(B)(ii)-(v).  C.H. testified that Appellant began “trying to mess with [him]” when he was five or six.  
See id. 
§ 22.021(a)(2)(B).  Appellant was accused of committing aggravated sexual assault of B.H. by intentionally or knowingly causing: (1) the penetration of B.H.’s mouth with his sexual organ, (2) B.H.’s sexual organ to contact Appellant’s mouth, (3) B.H.’s mouth to contact C.H.’s sexual organ, and (4) B.H.’s sexual organ to contact C.H.’s mouth.  
See id. 
§ 22.021(a)(1)(B)(ii), (iii), (v).  B.H. testified that he was five years old when he was first assaulted by Appellant.  
See id. 
§ 22.021(a)(2)(B). 

C.H. testified that Appellant sexually abused him at Appellant’s house, in the church office, and at Appellant’s friend’s house.  C.H. testified that when he spent the night at Appellant’s house, he woke up to Appellant “sticking his penis in my butt” and that Appellant also did this at the church, as well as telling C.H. “to stick my penis in his butt.”  
See id.
 § 22.021(a)(1)(B)(iii), (iv).  He testified that Appellant would “suck my penis, he would make me stick my penis up his butt and he would try raping me up the butt[;] he would make me suck his penis.”  
See id.
 § 22.021(a)(1)(B)(ii), (iii).  He also testified that Appellant put his mouth on C.H.’s butt.  
See id.
 § 22.021(a)(1)(B)(iv).  Testimony established that C.H. used the word “butt” for “anus.”

C.H. testified that when Appellant took him and B.H. to a friend’s house, Appellant told C.H. “to suck [B.H.’s] penis and he told [B.H.] to suck [C.H.’s].” C.H. testified that, ultimately, he had to put his mouth on B.H.’s penis “once or twice” and that B.H. put his mouth on C.H.’s penis “about once or twice.” 
See id. 
§ 22.021(a)(1)(B)(iii), (v).  Araceli Desmarais, one of the sexual assault nurse examiners, testified that during her medical examination of C.H., in addition to the same information above, C.H. told her that Appellant “would make [C.H.] and his brother suck on each other’s penises, but that he never did it.  He said his brother did suck on his penis a couple of times.”

C.H. testified that B.H. was almost five years old when Appellant started messing with him, and that C.H. told him to stop and “started to fight him off, trying to save [B.H.], and then [Appellant] would beat me.”
(footnote: 4)  B.H. testified that Appellant “messed with me” and that C.H. was there when Appellant would touch him and “would get in the way, because he didn’t want me to go through this like he had to, so he would get in the way[,] and [Appellant] would get his belt[,] and he would hit [C.H.] with the metal part of his belt.” B.H. testified that the sexual abuse happened when they were at Appellant’s house and sometimes when they were at the church, when Appellant locked all of the doors, took them into his office, and locked the office door.  He also testified that Appellant took them to someone else’s house and that Appellant and another man would take C.H. to the back.  B.H. testified that Appellant “told us if we ever told on him, he would beat us into vegetables.”

B.H. elaborated that Appellant sucked B.H.’s “private part”
(footnote: 5) and “would make [B.H.] suck on his [penis].”  
See id. 
§ 22.021(a)(1)(B)(ii), (iii).  B.H. testified that he did not recall Appellant ever making him do anything to C.H. or C.H. do anything to him, but admitted that he had tried to forget some of the abuse.  Desmarais testified that during her medical examination of B.H., he denied any sexual contact with C.H.  but repeated the above statements and told her that Appellant “tried to make me and [C.H.] do all of that stuff I just told you he did to us.”

Appellant was accused of committing aggravated sexual assault of M.L. by intentionally or knowingly causing M.L.’s sexual organ to penetrate Appellant’s mouth and causing the penetration of M.L.’s anus by inserting Appellant’s finger.  
See id. 
§ 22.021(a)(1)(B)(I), (iii).  M.L. was thirteen years old when he made an outcry to his mother.  
See id. 
§ 22.021(a)(2)(B).

M.L. told his mother that “it” had happened three or four times, at church and at Appellant’s home.  M.L. testified that Appellant took him to the church office, told him not to tell anyone, performed oral sex on M.L., and told him, “This is our little secret.”  This happened three more times, and the third time, Appellant asked M.L. if he wanted to touch Appellant’s penis.  M.L. testified that when he said no, Appellant said, “That’s fine.”

The last encounter occurred at Appellant’s house when M.L. spent the night with C.H. during spring break.  M.L. testified that he was about to go to sleep when Appellant came in, reached under the bedcovers, and started touching M.L.’s penis and pulled off M.L.’s boxer shorts.  M.L. testified that Appellant pulled down his pajama pants and lightly put his penis between M.L.’s butt cheeks.  M.L. testified that he shoved Appellant away and Appellant pulled up his pajama pants and left the room.  M.L. also testified that Appellant touched M.L.’s anus with his finger, before he tried to put his penis in M.L.’s anus, but that he did not remember that very well because he had tried to forget.  Virginia Caldwell, the other sexual assault nurse examiner, testified that during her medical examination of M.L., M.L. told her that Appellant “put his finger on the inside of where he poops from.”

M.L. testified that Appellant told him the next morning that Appellant did it to C.H. sometimes and that C.H. shook his head up and down, which M.L. took to mean “yes.”  Fort Worth police detective Dennis Hutchins testified that in the course of investigating M.L.’s complaint against Appellant, he also met with C.H., and that, at that time, C.H. told him that he was not a victim and did not know why M.L. would have said that.  Detective Hutchins testified that, several months later, he received an offense report stating that C.H. had made an outcry of sexual abuse by Appellant.

Appellant testified that he did not do anything to any of the boys and that they were lying.  He testified that C.H. was lying in retaliation for Appellant disciplining him.  He testified that, before his outcry, C.H. did not want to help his mother in the kitchen and dropped silverware on the floor and when Appellant told him to behave, C.H. said, “Well, I know how to get you in trouble.”  Appellant testified that he replied, “Go for it, little boy.  I’m not afraid of you or anything that you can do,” and that, after this, C.H. made his outcry. C.H.’s mother gave contradictory testimony, stating that Appellant left the room before C.H. said to her, “If only people knew what Papa done to me, he’d be in so much trouble,” and that when he said that, she took him into another room and he made his outcry.

C.H. testified that he told Appellant that Appellant needed to leave him alone because he could go to jail if C.H. said anything but denied making the statement to his mother about getting Appellant in trouble.  He testified that he dropped the silverware because Appellant had come up behind him and grabbed his butt.  C.H. testified that he did not say anything when M.L. made an outcry because he was afraid and that no one at Appellant’s church believed M.L., C.H.’s parents paid Appellant’s bail, and C.H. thought that Appellant would stop after he had been arrested on the charges involving M.L.  C.H. testified that he finally told his mother after his parents decided to add a bedroom for Appellant to their new home because Appellant would have “probably messed with me every day for the rest of my life” and because Appellant tried to “mess with [C.H.]” even after M.L. outcried.

Appellant testified that M.L. was lying because Appellant did not protect M.L. from M.L.’s father, who was also accused of molesting children.  He testified that B.H. was lying because he was being intimidated by C.H.  He also testified that he had not always been a pastor, that he had worked in sales from 1978 to 1991, and that he was a good salesman.

Reviewing the entire record in the light most favorable to the verdict, we conclude that the jury could have found the essential elements of all of the aggravated sexual assault counts brought against Appellant by C.H., B.H., and M.L. after resolving conflicts in the testimony.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693.  All of the boys were younger than fourteen and the jury could have inferred, based on the evidence presented, that Appellant’s acts were intentional or knowing.  
See Margraves
, 34 S.W.3d at 919 (stating that in a sufficiency review, the jury’s inference of intent is afforded more deference than the evidence supporting proof of conduct).  Each element was satisfied by the children’s testimony, with the exception of the count pertaining to Appellant’s digital penetration of M.L.’s anus.  But Caldwell’s testimony that during her medical examination of M.L., he had told her that Appellant had penetrated his anus with Appellant’s finger, and M.L.’s testimony that he recalled Appellant touching his anus with Appellant’s finger but that he had tried to forget were sufficient to support the jury’s findings that Appellant penetrated M.L.’s anus with his finger.  Therefore, the evidence was legally sufficient to convict Appellant of committing all of the aggravated sexual assault counts charged in the cases regarding C.H., B.H., and M.L., and we overrule this portion of Appellant’s first point.

Reviewing all of the evidence in a neutral light and giving due deference to the jury’s determinations of the weight to be given contradictory testimonial evidence, we come to the same conclusion with regard to Appellant’s factual sufficiency challenge.  
See Watson
, 204 S.W.3d at 414; 
Johnson
, 23 S.W.3d at 8-9.  The evidence supporting the conviction was not so weak that the jury’s determination was clearly wrong and manifestly unjust, and the conflicting evidence did not so greatly outweigh the evidence supporting the conviction that the jury’s determination was manifestly unjust.  
See Watson
, 204 S.W.3d at 414-15, 417.  Accordingly, we overrule this portion of Appellant’s second point.

Indecency With A Child

A person commits the offense of indecency with a child if, with a child younger than seventeen years and not the person’s spouse, he engages in sexual contact with the child or causes the child to engage in sexual contact, or, with the intent to arouse or gratify the sexual desire of any person, he exposes his anus or any part of his genitals, knowing the child is present, or causes the child to expose the child’s anus or any part of the child’s genitals.  
See 
Tex. Penal Code Ann. 
§ 21.11(a).  “Sexual contact” means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.  
Id
. § 21.11(c).  The specific intent to arouse or gratify the sexual desire element can be inferred from the defendant’s conduct, his remarks, and all surrounding circumstances.  
See McKenzie v. State
, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); 
Couchman v. State
, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref’d). 

Appellant was accused of committing indecency by committing the following acts with the intent to arouse or gratify his sexual desire: touching B.H.’s genitals and causing B.H. to touch Appellant’s genitals, touching C.H.’s genitals and causing C.H. to touch Appellant’s genitals, and touching M.L.’s genitals and exposing Appellant’s penis to M.L., knowing M.L. was present.
(footnote: 6) B.H. testified that Appellant touched and rubbed B.H.’s private parts under his underwear with his hands and that he sometimes saw Appellant do the same thing to C.H.  He also testified that Appellant made him rub Appellant’s private part with his hand.  C.H. testified that the sexual abuse started when he was five or six, that Appellant would “reach over and grab [him]” and touch C.H.’s private parts over his clothes and then progressed to skin-to-skin contact by pulling C.H.’s pants down to his ankles and “jacking [him] off.”  When asked if he had to touch Appellant’s penis with his hand, C.H. replied, “A lot,” and “Yes, I did have to.”

M.L. testified that Appellant touched M.L.’s genitals over M.L.’s clothing first, before telling him to pull down his pants and underwear and then masturbating M.L. and performing oral sex on him.  M.L. testified that after he ejaculated, Appellant handed him a tissue and then started touching himself until he ejaculated, and then they left.  The next two times happened essentially the same way.  M.L. testified that the fourth time, when he spent the night at Appellant’s house, Appellant touched M.L.’s penis and touched M.L.’s butt with Appellant’s penis.

Appellant denied everything, as discussed above.  He testified that he married his wife, Mary, in 1968, divorced her in 1987, remarried her in 1988, and is still married to her.  He testified that he is not gay, and, in response to the State’s questioning, claimed that he had never had homosexual experiences with anyone, including Danny Spiars.  The State brought Spiars, now age fifty, as a rebuttal witness and he testified that when he was around sixteen years old, he met Appellant in a park and they had sexual contact in Appellant’s car. Spiars testified that he is a homosexual.

Reviewing the entire record in the light most favorable to the verdict, we conclude that the jury could have found the essential elements of the indecency by contact counts brought against Appellant by C.H. and B.H., and two of the  indecency by contact and the indecency by exposure counts brought by M.L.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693.  Accordingly, we overrule this portion of his first point.  Viewing the same evidence in a neutral light, we also conclude that it was not so weak that the jury’s determination was clearly wrong and manifestly unjust, or that the conflicting evidence presented by Appellant so greatly outweighed the evidence supporting the indecency convictions that the jury’s determination was manifestly unjust.  
See Watson
, 204 S.W.3d at 414-15, 417; 
Johnson
, 23 S.W.3d at 11.  Therefore, we also overrule this portion of Appellant’s second point. 

Attempted Aggravated Sexual Assault

A person commits an offense if, with the specific intent to commit an offense, he does an act amounting to more than mere preparation, that tends but fails to effect the commission of the intended offense.  
Tex. Penal Code Ann. § 
15.01(a). 
 
If he attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an
 
element that aggravates the offense accompanies the attempt.  
Id.
 § 15.01(b); 
see also id. 
§ 22.021(a)(1)(B)(ii), (a)(1)(B)(v), (a)(2)(B).

Appellant was accused of attempting to commit aggravated sexual assault against C.M.  C.M. testified that when he was around thirteen, Appellant took him to church, called him into his office afterwards, and asked if he had ever been “jacked off.”  He testified that Appellant then asked him if he “would like to suck [Appellant’s] dick,” and pulled out his erect penis.  C.M. testified that he had to wrestle Appellant to get away and then he fled from the church.  Appellant denied this, testifying that C.M. wanted attention and “likes to be what I would call a drama king,” and that C.M. was a habitual liar.

When reviewed with the rest of the record in the light most favorable to the verdict and in a neutral light, C.M.’s testimony could have led the jury to find that Appellant attempted to commit aggravated sexual assault of C.M. by attempting to cause the penetration or contact of C.M.’s mouth with his sexual organ when C.M. was younger than fourteen, rendering the evidence both legally and factually sufficient to support the conviction.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Watson
, 204 S.W.3d at 414-15, 417. Therefore, we overrule this portion of Appellant’s first and second points.

PRESERVATION OF ERROR

In his third point, Appellant complains that he was convicted “upon more than one count as between both of the indictments tried in both of the causes,” and this violated the Texas constitutional and statutory scheme as well as the federal constitutional prohibition against double jeopardy.  Appellant does not specify which counts he complains of.

In his fourth point, he contends that the trial court reversibly erred and abused its discretion by refusing to give a limiting instruction to the jury as to the jury’s consideration of extraneous offense evidence as it was introduced and “limiting the jury’s consideration of the evidence to separate consideration of each alleged offense as set forth in each count of each indictment.”

Standard Of Review

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P. 
33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P. 
33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Double Jeopardy

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. 
Const.
 amend. V.  As it pertains to Appellant’s complaint, this clause protects against multiple punishments for the same offense.  
Brown v. Ohio
, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); 
Ex parte Herron
, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh’g).  Generally, constitutional errors are forfeited by the failure to object at trial.  
Curry v. State
, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); 
accord Mendez
, 138 S.W.3d at 342.

Appellant asserts that “[t]he only consistent matter herein is that there was one incident” and that the State took one assault and made it into three offenses through “stop action” prosecution, in violation of 
Patterson v. State
, 152 S.W.3d 88 (Tex. Crim. App. 2004) (addressing statutory construction and not double jeopardy).  He also asserts that conviction here could only be upon a single count per complainant, “regardless of which indictment is considered.” Because his indictment for sexual performance by a child with D.M. involved only a single count, we infer that Appellant does not include this conviction in point three.

Generally, to preserve a double jeopardy claim, a defendant must object at or before the time the charge is submitted to the jury.  
Gonzalez v. State
, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  At trial, Appellant presented no objections to the jury charge.  An appellant is excused from the preservation requirement when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of usual rules of procedural default serves no legitimate state interests.  
Id
. at 643; 
see also Cabral v. State
, 170 S.W.3d 761, 764-65 (Tex. App.—Fort Worth 2005, pet. ref’d) (applying 
Gonzalez 
test). 

The record reflects that, with regard to B.H., Appellant was indicted for seven separate offenses.
(footnote: 7)  Count one charged that on or about July 13, 2003, Appellant caused the penetration of B.H.’s mouth with his sexual organ and count two charged that, on or about the same date, Appellant caused B.H.’s sexual organ to contact Appellant’s mouth.  Count three charged that on or about January 13, 2003, Appellant caused B.H.’s mouth to contact C.H.’s sexual organ.  Count four charged that on or about July 13, 2003, Appellant caused B.H.’s sexual organ to contact C.H.’s mouth.  Count six charged that on or about July 13, 2003, Appellant touched B.H.’s genitals, and count seven charged that on or about that same date, Appellant caused B.H. to touch Appellant’s genitals.  B.H. was eight at trial and testified that Appellant began abusing him when he was five years old, starting with touching him under his underwear at church and at Appellant’s house, and that this happened more than ten times.  With regard to Appellant making B.H. touch his genitals, B.H. testified that Appellant would make B.H. rub Appellant’s penis and that it happened at the house.  B.H. testified that this, and the behavior in the aggravated sexual assault counts discussed in our review of legal and factual sufficiency above, occurred “a whole lot of times” at the church and also occurred at the house.

It is well settled that the “on or about” language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations.  
Sledge v. State
, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).  Here, B.H.’s testimony described acts supporting each charge occurring prior to the presentation of the indictment
(footnote: 8) and within the applicable statute of limitations period.
(footnote: 9)  Thus, we find no double jeopardy violation apparent on the face of the record.  Appellant has therefore failed to meet the first prong of the exception to the preservation requirement set forth by 
Gonzalez
.  
See
 8 S.W.3d at 643.  Accordingly, we hold that Appellant failed to preserve this double jeopardy claim for our review.  
See id.
 at 642-46 (holding that a defendant could not raise a claim of multiple punishments for the first time on appeal and that failure to bring the issue to the attention of the trial court forfeited the claim;  no express waiver of double jeopardy rights was necessary). We overrule this portion of Appellant’s third point.

Applying the same analysis to the counts pertaining to C.H. and M.L., we reach the same conclusion, with the exception of the indecency count involving Appellant’s contact with M.L.’s anus.  
See id. 
 Appellant was indicted for ten separate offenses with regard to C.H.  Count one charged that on or about January 11, 1998, Appellant caused C.H.’s anus to contact Appellant’s penis and count two charged that Appellant caused C.H.’s sexual organ to contact Appellant’s anus on or about the same date.  Count three charged that on or about January 11, 1998, Appellant caused the penetration of C.H.’s mouth with Appellant’s sexual organ and count four charged that Appellant caused C.H.’s sexual organ to contact Appellant’s mouth on or about the same date. Count five charged that on or about January 11, 1998, Appellant caused C.H.’s anus to contact Appellant’s mouth.  Count six charged that on or about January 11, 1998, Appellant caused C.H.’s sexual organ to contact B.H.’s mouth and count seven charged that Appellant caused C.H.’s mouth to contact B.H.’s sexual organ on or about that same date.
(footnote: 10)  Counts eight and nine involved indecency with a child by sexual contact, with C.H. touching Appellant’s genitals and Appellant touching C.H.’s genitals, both alleged on or about January 11, 1998, and count ten involved the sexual performance by a child alleged to have occurred on or about January 11, 1998.  During his testimony, as discussed above with regard to legal and factual sufficiency, C.H. described acts supporting each of these charges as occurring prior to the presentation of the indictment
(footnote: 11) and within the applicable statute of limitations period.  We overrule this portion of Appellant’s third point.

With regard to M.L., count one charged that on or about March 15, 2004, Appellant caused M.L.’s sexual organ to penetrate Appellant’s mouth and count three charged that on or about the same date, Appellant caused the penetration of M.L.’s anus with Appellant’s finger.
(footnote: 12)  M.L. provided testimony that supported both of these convictions, testifying that on three separate occasions, Appellant put M.L.’s penis in Appellant’s mouth and sucked on it, and, that when M.L. spent the night at Appellant’s house during spring break, Appellant digitally penetrated M.L.’s anus.  Caldwell’s testimony also supported the conviction for digital penetration.

However, count four, the first indecency count, charged that on or about March 15, 2004, Appellant engaged in sexual contact by touching M.L.’s anus. The testimony pertaining to Appellant touching M.L.’s anus is also the same testimony that supports his conviction for aggravated sexual assault by digital penetration—a single incident.  Therefore, the indecency conviction should properly have been subsumed in the aggravated sexual assault conviction.
(footnote: 13)  
See Ochoa v. State
, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998).  This error is apparent on the face of the record and the trial court knew or should have known of the problem
.  Cf. Gonzalez
, 8 S.W.3d at 640-41, 645 (concluding that there was no error on the face of the record because only one of three possible means of committing the offense, robbery, implicated double jeopardy considerations).  The proper remedy here is to modify the judgment by vacating the lesser conviction and sentence.  
See Ochoa
, 982 S.W.2d at 908; 
see also Ex parte Cavazos,
 203 S.W.3d 333, 338 (Tex. Crim. App. 2006).
  Accordingly, we will modify the judgment in cause number 02-06-086-CR by vacating the conviction of indecency with a child by touching M.L.’s anus and the sentence of twenty years’ confinement, but affirm the conviction for aggravated sexual assault for the same incident.

Count five charged that on or about March 15, 2004, Appellant touched M.L.’s genitals and count six charged that on or about that same date, Appellant exposed his penis to M.L.  Count seven charged that on or about November 30, 2004, Appellant touched M.L.’s genitals.  Because M.L.’s testimony that there were four separate incidents, three of which involved Appellant touching M.L.’s genitals and exposing his penis to M.L., supported these other indecency counts as occurring prior to the presentation of the indictment
(footnote: 14) and within the applicable statute of limitations period, we conclude that Appellant failed to preserve error with regard to these remaining counts. 
 See Cabral
, 170 S.W.3d at 764-65. 

With regard to C.M., count one charged Appellant with indecency by exposing his penis to C.M. on or about January 31, 2002, and count two charged that, on or about the same date, Appellant attempted to commit sexual assault by asking C.M. if he had ever sucked anyone’s penis and exposing his penis to him with the specific intent to commit the offense of sexual assault of a child.  The testimony pertaining to the indecency by exposure count is also the same testimony that supports Appellant’s conviction for attempted aggravated sexual assault—a single incident and action by Appellant.
(footnote: 15)  Therefore, the indecency conviction should properly have been subsumed in the attempted aggravated sexual assault conviction.  
See Ochoa
, 982 S.W.2d at 908.  This error is apparent on the face of the record and the trial court knew or should have known of the problem.  
Cf. Gonzalez
, 8 S.W.3d at 640-41, 645.  The proper remedy here is to modify the judgment by vacating the lesser conviction and sentence.  
See Ochoa
, 982 S.W.2d at 908. 
 Accordingly, we will modify the judgment in cause number 02-06-085-CR by vacating the conviction for indecency with a child by exposure and the sentence of ten years’ confinement, but affirm the conviction for attempted aggravated sexual assault for the same incident.

Limiting Instruction

With regard to his fourth point, Appellant complains that the trial court should have given a limiting instruction with regard to extraneous offense evidence at three specific instances—immediately after opening statements, after M.L.’s mother’s direct testimony, and during Detective Hutchins’s direct testimony.

Preservation of Error

An objection must be made as soon as the basis for the objection becomes apparent.  
Tex. R. Evid. 
103(a)(1); 
Lagrone v. State
, 942 S.W.2d 602, 618 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997); 
Polk v. State
, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).  An early objection is just as fatal as a late one.  
See Johnson v. State
, 977 S.W.2d 725, 728 (Tex. App.—Fort Worth 1998, pet. ref’d) (op. on reh’g) (citing Hon. Charles F. Campbell & William P. Green, 
Guidelines for Preserving Error or How Not to Drop the Ball
, 54 
Tex. B.J. 
1178, 1180 (1991)).  To preserve error, a party must continue to object each time the objectionable evidence is offered.  
Fuentes v. State
, 991 S.W.2d 267, 273 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999); 
Ethington v. State
, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  An objection preserves only the specific ground cited.  
Tex. R. App. P. 
33.1(a)(1)(A); 
Mosley
, 983 S.W.2d at 265; 
Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
see also Fierro v. State
, 706 S.W.2d 310, 317-18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review), 
cert. denied
, 521 U.S. 1122 (1997).

In his first request for a limiting instruction, Appellant made clear that he was not arguing about admissibility.  The State had submitted a list of forty-nine extraneous offenses months before trial, which Appellant acknowledged receiving during the pretrial hearing.  This list included the offenses charged against him with regard to C.M., M.L., C.H., B.H., and D.M.  Immediately after opening statements, Appellant discussed with the State and the trial court about when and how to give a limiting instruction.  He sought a limiting instruction “as contemplated in Headnote No. 7,” of 
Ex parte Varelas
.  
See Ex parte Varelas
, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001) (stating that once an extraneous act has been ruled admissible, jurors must be instructed about the limits on their use of that extraneous act if the defendant so requests
).  Appellant added, 

The logic behind that limiting instruction is so the jury won’t feel, for example, feel wishy-washy about cases one, two, and three, and sure [sic] that up with information from cases four and five.  And it may be a little confusing as to how that comes out, because the—when the objection is made, how it applies to the other two, three or four cases and how that limiting instruction is given. 

The trial court replied, “You’re the one making suggestions.  I’m listening.” Appellant attempted to clarify, 

Well, obviously, even before the first witness testifies, that information is going to be extraneous to at least some of the other indictments.  Accordingly, we could request a limiting—we would request a limiting instruction from the beginning and I guess—I guess what I—the question then becomes how often and when does the Court continue to give that limiting instruction?

The trial court attempted to clarify, stating that it thought Appellant was asking for a limiting instruction with regard to the five cases and that “[w]hen number one testifies, [Appellant’s] talking about a limiting instruction about causes two through five.  That’s what he’s talking about.  I think the easiest way would be to give an instruction in the charge as to extraneous offenses.”
(footnote: 16)  The record reflects that it did so.  After the trial court took a brief recess, Appellant and the trial court had the following conversation.

Trial Court: [F]irst of all, you haven’t told me what you wanted.

Appellant’s attorney: Well, what we would request, Your Honor, specifically before the evidence is put out, because evidence of case one would be extraneous to cases two, three, four and five— 

Trial Court: How do we know that yet?  Some of these witnesses intertwine, and they’re mentioned once.  I don’t know who the first witness is.  I don’t think we need to make a ruling on it until I’ve heard the evidence.  

Appellant’s attorney: I understand, Your Honor.  I’m just saying what the defense would request would be a limiting instruction up front and a limiting instruction in the charge.

The trial court denied his request at that time.

We cannot say that the trial court erred here by denying Appellant’s first request for a limiting instruction.  Rule 105(a) states

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose 
is admitted
, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Tex. R. Evid. 
105(a) (emphasis added).  The court of criminal appeals has consistently interpreted rule 105 to require a request for a limiting instruction when the evidence is admitted.  
See Hammock v. State
, 46 S.W.3d 889, 893-94 (Tex. Crim. App. 2001)
; 
see also Scott v. State
, 222 S.W.3d 820, 829 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (stating that limiting instructions should be given to the jury twice: once when the evidence is admitted and again in the jury charge).  At this stage of the trial, no evidence had yet been admitted.  Therefore, Appellant’s first request was untimely and the trial court did not err by denying it.  
See Varelas
, 45 S.W.3d at 631 n.3 (noting that 
the defendant has the burden of requesting a limiting instruction at the time the evidence is admitted as well as requesting a limiting instruction in the charge).
(footnote: 17) 
We overrule this portion of Appellant’s fourth point.

M.L.’s mother testified that after the police left, M.L. told her that C.H. had been in the room when it happened.  Appellant made no objection at that time.  Instead, Appellant waited to request a limiting instruction until after M.L.’s mother had finished testifying on direct.  The trial court overruled his objection.  Therefore, because Appellant’s objection was untimely, we overrule this portion of Appellant’s fourth point.  
See Johnson
, 977 S.W.2d at 728.

Appellant requested a limiting instruction during Detective Hutchins’ testimony about M.L., stating, after the State asked the detective who the additional victim that had been reported was, “At this point, Your Honor, we would request a limiting instruction with regard to allegations outside of [M.L.].  At this point, that would be extraneous, and we would request a limiting instruction.”  The trial court overruled this objection and the detective testified that the additional victim was C.H., that he interviewed C.H., and that at that time, C.H. told him that he did not know anything about M.L.’s allegations.  The detective testified that several months later, he received an offense report listing C.H. as the victim and Appellant as the perpetrator.  During his cross-examination of Detective Hutchins, Appellant asked him whether he was involved not only in the M.L. investigation, but also with C.H., D.M., B.H., and C.M.  Detective Hutchins testified that he was involved with all of the investigations but the one involving C.M.

Even if the jury should have been given a limiting instruction with regard to Detective Hutchins’s testimony about C.H., we conclude that there was no harm.  
See
 
Tex. R. App. P. 
44.2(b); 
see, e.g., Umoja v. State
, 965 S.W.2d 3, 12 (Tex. App.—Fort Worth 1998, no pet.) (op. on reh’g) (holding that improperly admitted evidence of previous bad act against complainant was nonconstitutional error).  For nonconstitutional error, we apply rule 44.2(b) and disregard the error if it did not affect Appellant’s substantial rights.  
Tex. R. App. P. 
44.2(b); 
see Mosley
, 983 S.W.2d at 259
; 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).
  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall
, 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  

The primary issue before the jury was one of witness credibility.  We conclude that, within the context of the entire case, including the legal and factually sufficiency of the evidence and Appellant’s failure to request a limiting instruction during any other testimony covering the same extraneous offense evidence, the failure to give a limiting instruction here did not have a substantial or injurious effect on the jury’s verdict and did not affect Appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  We overrule this portion of Appellant’s fourth point.  
See
 
Tex. R. App. P. 
44.2(b).

Finally, Appellant asserts that the trial court failed “to give a limiting instruction that the jury could not consider evidence in one count to supply evidence in another, i.e., consider evidence as to counts separately.”  However, other than his vague reference during his first request to “the logic behind that limiting instruction,” he did not make such a request of the trial court at that time, nor during his other two requests for limiting instructions, and did not object to the limiting instruction included by the trial court in the jury charge. Because his complaint on appeal does not comport with that made at trial, he has failed to preserve it for our review.  
Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited).

ELECTION

In his final point, Appellant complains that the trial court “reversibly erred and abused its discretion in refusing to require the State to elect between allegations forming the basis of each count of conviction.”  Once the State rests its case in chief, on the timely request of a defendant, the trial court must order the State to make its election. 
 Phillips v. State
, 193 S.W.3d 904, 912 (Tex. Crim. App. 2006).  Absent a motion by the defendant, however, the State is not required to make such an election.  
O’Neal v. State
, 746 S.W.2d 769, 771 n.3 (Tex. Crim. App. 1988).  Appellant did not make any request for an election, and we find no authority suggesting that the trial court should have ordered one 
sua sponte
.  
See Phillips
, 193 S.W.3d at 909, 911; 
O’Neal
, 746 S.W.2d at 771 n.3.  Therefore, Appellant failed to preserve this complaint; we overrule his fifth point.

CONCLUSION

We modify the trial court’s judgment in cause number 2-06-086-CR;
(footnote: 18) vacate Appellant’s conviction for indecency with a child by touching M.L.’s anus and the sentence of twenty years’ confinement; and affirm the remainder of the trial court’s judgment.  We modify the trial court’s judgment in cause number 2-06-085-CR;
(footnote: 19) vacate Appellant’s conviction for indecency with a child by exposure to C.M. and the sentence of ten years’ confinement; and affirm the remainder of the trial court’s judgment in that case.  Having overruled all of Appellant’s remaining points, we affirm the trial court’s judgments in causes 2-06-082-CR,
(footnote: 20) 2-06-083-CR,
(footnote: 21) and 2-06-084-CR.
(footnote: 22)

DIXON W. HOLMAN

JUSTICE

PANEL A:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 16, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See 
Tex. Penal Code Ann. 
§ 15.01 (Vernon 2003) (criminal attempt); 
id
. § 21.11 (indecency with a child);
 id.
 § 22.021 (Vernon Supp. 2006) (aggravated sexual assault); 
id
. § 43.25 (sexual performance by a child).

3:
D.M.’s older brother testified during the State’s rebuttal about the contest.  He testified that the contest was Appellant’s idea and that he, D.M., and C.H. participated.  He testified that he was completely covered, did not actually masturbate, and lied to Appellant about it.  He testified that he received $10.00 for saying he was finished first and that both D.M. and C.H. received $5.00.  He testified that he told C.M. about it afterwards.

4:
C.H. also testified that when he was seven or eight, Appellant took him to a friend’s house and told him to engage in anal, vaginal, and oral sex with a blonde woman whom the men paid.  C.H. testified that he did so because Appellant threatened him and that the men snapped some pictures of him and the woman.  He testified that when B.H. came with them, the woman was not there.  He also testified that one time, his sisters came too, but Appellant put them in another room to watch television and they did not know what was going on.

C.H. testified that he went over to Appellant’s friend’s house between ten and fifteen times and that Appellant’s friend never did anything to C.H., but that Appellant would continue to “mess with [C.H.]” over there.

5:
Using an anatomically correct doll, B.H. indicated that “private parts” meant the penis.

6:
Because of our discussion below with regard to double jeopardy, we will not discuss the legal and factual sufficiency pertaining to Appellant’s conviction for indecency with a child involving M.L. based on contact with M.L.’s anus, or Appellant’s conviction for indecency with a child involving C.M. based on exposure of Appellant’s genitals.  
See
 
Tex. R. App. P. 
47.1.

7:
Count five, alleging that on or around July 13, 2003, Appellant induced B.H. into sexual performance, was abandoned.

8:
We come to this conclusion based on the date of the presentation of the indictment, January 28, 2005, and B.H.’s testimony that he was born in 1997 and the offenses occurred when he was about five years old.

9:
The limitations period for indecency with a child and aggravated sexual assault is ten years from the complainant’s eighteenth birthday.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 12.01(5) (Vernon Supp. 2006). 

10:
C.H. testified that Appellant told him “to suck [B.H.’s] penis and told [B.H.] to suck [C.H.’s]” and that, ultimately, he had to put his mouth on B.H.’s penis “once or twice” and that B.H. put his mouth on C.H.’s penis “about once or twice.”  Desmarais testified that C.H. told her that Appellant “would make [C.H.] and his brother suck on each other’s penis, but that he never did it.  He said his brother did suck on his penis a couple of times.”  As long as the jury found that C.H. put his mouth on B.H.’s penis twice and B.H. put his mouth on C.H.’s penis twice, this testimony was legally sufficient to support all four charges—two pertaining to C.H. and two pertaining to B.H.

11:
The indictment was presented on January 28, 2005.  C.H. testified that he was born in 1993 and that the offenses began when he was about five or six years old.

12:
Count two, alleging that Appellant committed aggravated sexual assault by causing M.L.’s anus to contact Appellant’s penis, was abandoned.

13:
In a case in which the evidence raises the issue of the defendant’s intent to arouse or gratify his sexual desire in the course of committing the penetration element of sexual assault, the court should submit to the jury the offense of indecency with a child as a lesser-included alternative to the offense of sexual assault.  
See Ochoa
, 982 S.W.2d at 908.  In 
Ochoa
, the defendant was convicted of aggravated sexual assault of a child and indecency with a child with both charges arising from a single act.  
Id
.  When the evidence at trial shows that only one offense was committed, the State may not seek conviction for two offenses.  
Id
.

14:
The indictment was initially presented on June 24, 2004, and then refiled on January 28, 2005.  M.L.’s mother testified that M.L. was born in 1991, and M.L. testified that the offenses began when he was around eleven years old.

15:
C.M. testified that when he was around thirteen, Appellant asked if he had ever been “jacked off,” asked him if he “would like to suck [Appellant’s] dick,” and pulled Appellant’s erect penis from his pants.

16:
The State argued that no limiting instruction was necessary because  the charged offenses were not extraneous, Appellant had requested to try the cases together, and the evidence would overlap in the cases.

17:
Varelas
 involved the capital murder of a two-year-old child.  45 S.W.3d at 629.  The State presented evidence of the cause of death and abuse before death and five specific extraneous acts of abuse of the child by the defendant.  
Id
. at 630.  The complaint on writ of habeas corpus was ineffective assistance of counsel because the defense attorney failed to request limiting instructions.  
Id
. at 631-32.  

18:
Trial court cause number 0957913R.

19:
Trial court cause number 0957926D.

20:
Trial court cause number 0961727D.

21:
Trial court cause number 0961726D.

22:
Trial court cause number 0961715D.